1 | RONDA R. DIXON   SBN 136858
DIXON JUSTICE CENTER
2 | 4640 Admiralty Way, Suite 500
Marina Del Ray, CA 90292
3 | Tel: (323)641-2731
E-mail: ronda@dixonjusticecenter.com
4 |

5 | Counsel for Plaintiff

6 |

7 | **UNITED STATES DISTRICT COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA**

9 | **LOS ANGELES**

10 |

11 | TAQUAN JONES, an individual,                )   **Case No.: 2:21-CV-7929**

12 | ,                                           )

13 |                    Plaintiff,              )   **COMPLAINT FOR DAMAGES:**

14 |        vs.                                  )   **1.  CIVIL RICO**
                                                )   **2.  TORTIOUS INTERFERENCE WITH**
15 |                                            )   **PROSPECTIVE ECONOMIC**
HOLLYWOOD UNLOCKED, INC., a              )   **ADVANTAGE**
16 | Delaware corporation; JASON LEE         )   **3.  TORTIOUS INTERFERENCE WITH**
JOHNSON, an individual; ROBERT KAWAN )   **CONTRACT**
17 | CLOSS, an individual; GUARDINI          )   **4.  FRAUD**
BELLEFLEUR, an individual, BIGO         )   **5.  CONSPIRACY TO COMMIT FRAUD**
18 | TECHNOLOGY, a Delaware Corporation;     )   **6.  TRADEMARK INFRINGEMENT**
BIGO TECHNOLOGY PTE, LTD. A             )   **7.  CYBERPIRACY**
19 | Singapore private limited company;      )   **8.  TRADE LIBEL / BUSINESS**
KEIYANA FORDHAM PILSON, an              )   **DISPARAGEMENT**
20 | individual, PILSON LAW GROUP, P.C., a   )   **9.  DEFAMATION PER SE**
professional corporation; and DOES 1    )   **10. GROUP BOYCOTT – PER SE**
21 | THROUGH 100, inclusive;                 )   **VIOLATION OF SHERMAN ACT**
                                                )   **11. SPECIFIC PERFORMANCE**
22 |                    Defendants.             )   **12. DECLARATORY RELIEF, WITH**
                                                )   **REQUEST FOR TEMPORARY**
23 |                                            )   **PRELIMINARY AND PERMANENT**
                                                )   **INJUNTIVE RELIEF.**
24 |

25 |                                                **DEMAND FOR JURY TRIAL**

26 |

27 |

28 |

1      Plaintiff, TAQUAN JONES, for his Complaint against Defendants HOLLYWOOD

2  UNLOCKED, INC., JASON LEE JOHNSON, ROBERT KAWAN CLOSS, GUARDINI

3  BELLEFLEUR, BIGO TECHNOLOGY, BIGO TECHNOLOGY PTE, LTD., (Hereinafter BIGO),

4  KEIYANA FORDHAM PILSON, PILSON LAW GROUP, P.C., and DOES 1 through 100, inclusive,

5  ("Defendants") alleges as follows:

6  **INTRODUCTION**

7      1.    This lawsuit demonstrates the lengths people will go to eliminate their competition for

8  commercial advantage and to gain fame by using slander, brand disparagement, trademark

9  infringement, illegal boycott.

10      2.    Plaintiff, TaQuan Jones, is an influencer, media personality, and gossip blogger known

11  by the nickname "Tae." He is most well-known for performing as "Tae the Mahne Tea" on the BIGO

12  Live platform. Plaintiff is one of the most popular artists on the site, with nearly two million followers.

13      3.    Defendant, Jason Lee Johnson, is a media personality known professionally as "Jason

14  Lee." He had a minor role in the television series *Love & Hip Hop* and has since been attempting to

15  gain a following as a gossip blogger through his business, Hollywood Unlocked.

16      4.    Seeking to quickly gain a following on the BIGO Platform, Defendant JOHNSON

17  proposed to Plaintiff, JONES, that JONES perform on his show.  After a couple of performances,

18  Plaintiff JONES decided he no longer wanted to perform on his show due to creative differences.

19      5.    Feeling spurned by Plaintiff declining Defendants JOHNSON and HOLLYWOOD

20  UNLOCKED's requests to collaborate on the BIGO platform – and thereby unable to capitalize on

21  Plaintiff's substantial following – Defendants JOHNSON, CLOSS, BELLEFLEUR, and

22  HOLLYWOOD UNLOCKED have engaged in a pattern and practice of harassment, slander, and

23  fraud as is detailed herein.

24      6.    Defendants waged a mufti prong attack on Plaintiff JONES, using social media,

25  commercial radio, the trademark office, filing false police reports, putting up false and slanderous

26  pages on social media with the intent to cause the social media platforms to suspend and shut down his

27  lucrative accounts. They succeeded in shutting down the Twitter account by filing a false trademark

28

1  application. They succeeded in shutting down the BIGO account by filing false police reports.

2        7.    For these reasons, Plaintiff brings the instant action requesting injunctive relief and

3  damages.

4  ### **JURISDICTION AND VENUE**

5        8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

6  1331 (federal question) and 1332 (diversity jurisdiction), 15 U.S.C. § 2, and 18 U.S.C. § 1964 (RICO

7  – Civil Remedies). Plaintiff resides in Maryland, Defendant LEE, PILSON reside in California, All

8  Defendants and Plaintiff's do business in California.

9        9.    The amount in controversy exceeds $75,000.

10        10.    This Court has personal jurisdiction over the Defendants because they reside, conduct

11  business, and broadcast to customers within the Central District of California.

12        11.    Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C.

13  § 1391.

14  ### **PARTIES**

15        12.    Plaintiff, TAQUAN JONES, is an individual residing in the State of Maryland. He is a

16  media personality and broadcasts on the BIGO Live platform under the name "The Mahne Tea."

17  Plaintiff, has been a influencer on the BIGO Live Stream Platform for approximately three years.

18        13.    Defendant, HOLLYWOOD UNLOCKED, INC., is a Delaware corporation with its

19  principal place of business in Los Angeles, California.

20        14.    Defendant JASON LEE JOHNSON is an individual residing in the State of California

21  and serves as the Chief Executive Officer of Hollywood Unlocked, Inc., among other roles.

22        15.    Defendant ROBERT KAWAN CLOSS is an individual residing in the State of New

23  York. He is a media personality and broadcasts on the BIGO Live platform under the name "God

24  Zeus." He is often featured on Defendant JOHNSON'S livestreams.

25        16.    Defendant GUARDINI BELLEFLEUR is an individual residing in the State of Texas.

26  He is a media personality and broadcasts on the BIGO Live platform under the name "Rick Rosa."

27  Like Defendant CLOSS, he is often featured on Defendant JOHNSON'S livestreams.

28

17.     Defendant KEIYANA FORDHAM PILSON is an individual residing in the State of California. She is an attorney licensed to practice law in the State of California, Bar Number 331699.

18.     Defendant PILSON LAW GROUP, P.C., is a professional corporation with its principal place of business in Santa Clara, California.

19.     Defendant BIGO TECHNOLGY is a Delaware Corporation.

20.     Defendant BIGO TECHNOLOGY PTE, LTD. Is a Singapore private Limited Company.

21.     Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believes and based on such information and belief avers that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

22.     Each named and unnamed defendant was the agent and employee of each of their named and unnamed defendant, who were acting, omitting to act, representing, misrepresenting, concealing and conspiring for the benefit of some or all of the other defendants, within the course and scope of such agency and employment and with the knowledge, consent, approval and ratification of the other Defendants, and each of them.

## GENERAL FACTUAL ALLEGATIONS

**A.     2019-2020: Plaintiff Joins BIGO Live and Builds a Following of Millions**

23.     In September 2019, Plaintiff began broadcasting as The Mahne Tea on the BIGO Live platform. His first episode streamed on or about September 8, 2019.

24.     As a media personality, Plaintiff works primarily in the area of celebrity gossip.

25.     Plaintiff and his content quickly resonated with BIGO Live viewers. In approximately one year, Plaintiff gained nearly two million followers and became one of the most popular broadcasters on the site.

26.     At all relevant times, Plaintiff used The Mahne Tea mark on BIGO Live. This mark was distinctive and used to identify himself to followers.

27.     In December 2020, Plaintiff created a Twitter domain using his The Mahne Tea mark, www.twitter.com/themahnetea.

**B.     Early 2021: Defendants Hollywood Unlocked and Johnson Seek to Capitalize on Plaintiff's Fame**

28.     Upon information and belief, Defendant JOHNSON began broadcasting on BIGO Live in February 2021.

29.     In April 2021, Defendants HOLLYWOOD UNLOCKED and JOHNSON, or persons on their behalf, contacted Plaintiff. Defendants desired to collaborate with Plaintiff on multiple video streams.

30.     A collaboration would give Defendant JOHNSON visibility to The Mahne Tea's nearly two million followers, possibly leading to thousands of new followers and live stream views.

31.     On BIGO Live, broadcasters' earnings are multifactorial. Upon information and belief, some broadcasters qualify to receive a salary based upon content type, number of followers, and time spent broadcasting. Broadcasters can also receive virtual gifts from viewers, which can then be exchanged for money.

32.     More followers and more views equal higher earnings.

33.     Initially, Plaintiff agreed to a limited collaboration.

34.     However, due to creative differences, Plaintiff ended the collaboration shortly thereafter.

**C.     Mid-2021: Rebuffed by Plaintiff, Defendants Seek Revenge and Fame**

35.     In June 2021, unable to capitalize on Plaintiff's celebrity status, Defendants HOLLYWOOD UNLOCKED and JOHNSON, in concert with the other Defendants, conspired to harm, and did harm, Plaintiff, his business, and his reputation.

**i.     June 2021: Defendants Improperly Trademark "The Mahne Tea" and Use the Trademark to Ban Plaintiff's Twitter Account and, Ultimately, Attempt Extortion**

36.     On or about June 11, 2021, Defendant HOLLYWOOD UNLOCKED, through its CEO, Defendant JOHNSON, and attorneys, Defendants PILSON and PILSON LAW GROUP, filed an application with the United States Patent and Trademark Office (USPTO) to register The Mahne Tea as a service mark.

37.     At the time of application filing, Defendants HOLLYWOOD UNLOCKED and JOHNSON knew The Mahne Tea was the mark owned and used by Plaintiff.

38.     At the time of application filing, Defendants PILSON and PILSON LAW GROUP knew or should have known that The Mahne Tea was a mark owned and used by Plaintiff.

39.     On or about June 11, 2021, citing their pending trademark application, Defendants HOLLYWOOD UNLOCKED and JOHNSON submitted a complaint to Twitter regarding Plaintiff's user name TheMahneTea and domain www.twitter.com/themahnetea.

40.     Despite full knowledge of Plaintiff's ownership of the mark, Defendants HOLLYWOOD UNLOCKED and JOHNSON represented to Twitter that Plaintiff's use constituted trademark infringement.

41.     As a result of Defendants' actions, Twitter suspended Plaintiff's account and domain.

42.     The account and domain remain suspended to date.

43.     On or about June 14, 2021, Defendants HOLLYWOOD UNLOCKED and JOHNSON's trademark application was granted by the USPTO.

44.     The same day, on or about June 14, 2021, Defendants HOLLYWOOD UNLOCKED and JOHNSON communicate to Plaintiff that they will give Plaintiff the trademark and drop the Twitter complaint in exchange for $100,000.

45.     Plaintiff refused this blatant attempt at extortion.

**ii.     June to September 2021: To Further Damage Plaintiff and Increase Their Own Exposure, Defendants Continue Lies and Begin Verbal Attacks**

46.     Celebrity gossip, even if untrue, is a popular topic among social media users. This is particularly the case when accusations are made against one of the most popular broadcasters on BIGO Live.

47.   Broadcasting such gossip – again, regardless of truth – is nearly guaranteed to result in an increase in views and follows, and as a result, an increase in income and fame.

48.   On or about June 20, 2021, during a BIGO Live broadcast, Defendant JOHNSON repeatedly and falsely stated Plaintiff has herpes.

49.   This statement is false.

50.   On or about, September 9, 2021, during a BIGO Live broadcast, Defendant JOHNSON referred to Plaintiff as a pedophile and molester.

51.   These statements are false.

52.   These statements arise out of a situation in which Plaintiff was unknowingly contacted by an underage BIGO Live platform user.

53.   Registration on the platform requires users to confirm they are over the age of 18.

54.   The user and Plaintiff messaged back and forth. The messaging contained **no** sexual comments, solicitations, or photographs.

55.   Plaintiff soon learned the user was not, in fact, over the age of 18, despite the user's representation to BIGO Live.

56.   Plaintiff immediately ceased contact with the user and has not communicated with the user since.

57.   Defendants JOHNSON, CLOSS, and BELLEFLEUR have continued to harass and threaten Plaintiff by referring to him as a pedophile, groomer, or similar negative connotation while broadcasting. Such actions occurred between September 8, 2021, and at last check, September 29, 2021.

58.   These statements are false.

59.   Unsatisfied with verbal slander on BIGO Live, Defendant JOHNSON took this harassment and intent to harm Plaintiff further.

60.   On or about September 13, 2021, Defendant JOHNSON contacted the leasing office where Plaintiff resides and reported Plaintiff as a pedophile.

61.   On or about September 13, 2021, Defendant JOHNSON contacted the police

1 | department in the municipality where Plaintiff currently resides, reporting him as a pedophile.

2      62.    As a result of Defendants' actions, Plaintiff has received hate mail, lost followers, and

3 | sustained economic and non-economic damages.

4    **iii.**    **September 2021: Defendants Report Plaintiff to BIGO Live, Alleging Trademark**

5      **Infringement**

6      63.    On or about September 17, 2021, Defendants HOLLYWOOD UNLOCKED and

7 | JOHNSON reported Plaintiff to BIGO Live for an alleged trademark violation, citing their June 11,

8 | 2021 application, despite that Plaintiff had used the mark for at least 18 months prior.

9      64.    On or about September 17, 2021, as a result of Defendants HOLLYWOOD

10 | UNLOCKED and JOHNSON's actions, the BIGO Live platform suspended Plaintiff's account.

11      65.    The suspension lasted three days.

12    **iv.**    **Ongoing Acts**

13      66.    To this day, Defendants HOLLYWOOD UNLOCKED, JOHNSON, CLOSS, and

14 | BELLEFLEUR continue to spread lies and untruths about Plaintiff in writing and via livestream.

15      67.    Upon information and belief, as a result of Defendants' actions, other BIGO Live

16 | broadcasters have been repeating Defendants' false statements.

17      68.    For purposes of brevity, the acts and omissions set forth in Paragraphs 31 through 63

18 | will be hereinafter referred to as "The Wrongful Acts."

19 | **D.**    **Defendants HOLLYWOOD UNLOCKED, JOHNSON, PILSON, and PILSON LAW**

20      **GROUP Have Previously Conspired to Commit, and Committed, Similar Frauds,**

21      **Harassment, and Harm**

22      69.    Upon information and belief, Defendants HOLLYWOOD UNLOCKED and

23 | JOHNSON have, on other occasions, acted to harm individuals Defendant JOHNSON did not like

24 | and/or believed wronged him.

25      70.    Plaintiff is aware of at least two other performers who have been defamed, harassed,

26 | and threatened by Defendants JOHNSON and HOLLYWOOD UNLOCKED. At least one of these

27 | performers also had their trademarks infringed upon by Defendants HOLLYWOOD UNLOCKED,

28

1  JOHNSON, PILSON, and PILSON LAW GROUP, using a scheme similar to the instant case.

2      71.    As an example, in December 2020, Defendants HOLLYWOOD UNLOCKED,

3  JOHNSON, PILSON, and PILSON LAW GROUP improperly registered three service marks owned

4  by another performer.

5      72.    Khia Shamone Finch Chambers is a rapper and media personality known professionally

6  as Khia.

7      73.    At all times material, Khia was the owner and user of three service marks: "Gag

8  Order," "Gag Nation," and "Gagging."

9      74.    Beginning no later than March 5, 2018, Khia used the mark Gag Order as the title for

10  her weekly YouTube web series.

11     75.    "Gag" is a term meaning joke or prank, and can be used in the same manner as the term

12  roast.

13     76.    As part of her series, Khia roasts people in the news.

14     77.    Since at least May 7, 2018, Khia has referred to this action as "gagging" and to herself

15  and her followers, collectively, as "Gag Nation."

16     78.    At all times material, Khia has used the Instagram domain

17  www.instagram.com/khiagagnation and user name @khiagagnation.

18     79.    Upon information and belief, in or around December 2020, a dispute arose between

19         Khia and Defendants HOLLYWOOD UNLOCKED and JOHNSON.

20     80.    Thereafter, Defendant HOLLYWOOD UNLOCKED, through its CEO, Defendant

21  JOHNSON, and attorneys, PILSON and PILSON LAW GROUP, submitted applications to the

22  USPTO to trademark the marks Gag Order, Gag Nation, and Gagging.

23     81.    On December 31, 2020, the USPTO granted Defendant HOLLYWOOD

24  UNLOCKED's applications as to Gag Nation and Gagging.

25     82.    On January 13, 2021, the USPTO granted Defendants HOLLYWOOD UNLOCKED's

26  application as to Gag Order.

27     83.    To date, Defendants continue to infringe upon Khia's three trademarks.

28

1  | **E.     Civil RICO Violations**

2  |     84.     Defendants are culpable persons under the civil RICO provisions who acquired and

3  | conducted an enterprise that affected the interstate commerce of sales and profits of Plaintiff through a

4  | consistent pattern of racketeering activity.  Defendants' acts are related and continuous. As a result

5  | thereof, Plaintiff has suffered financial injury.

6  |     85.     As described herein, Defendants continue to interfere with commerce by threats or

7  | violence, constituting ongoing violations of 18 U.S.C. §§ 1341, 1343, and/or 1951.

8  |     86.     Defendants have profited, and continue to profit from their illegal racketeering activity.

9  | Funds from these profits are invested throughout the United States and worldwide.

10 |     87.     Defendants' acts have been continuous and repetitive, and demonstrate that this pattern

11 | will continue.

12 | **COUNT I**

13 | **CIVIL RICO – Violation of 18 U.S.C. § 1962(c)**

14 | **Against Defendants Hollywood Unlocked, Johnson, Pilson, Pilson Law Group, and Does**

15 |     88.     Plaintiff hereby incorporates by reference each and every one of the preceding

16 | paragraphs as if the same were fully set forth herein.

17 |     89.     Defendants are engaged in, and their activities affect, interstate commerce.

18 |     90.     Defendants agreed to and did conduct and participate in the conduct of the affairs

19 | through a pattern of racketeering activity and for the unlawful purpose of intentionally committing

20 | fraud and harming Plaintiff.

21 |     91.     Specifically, Defendants falsely represented that Defendant HOLLYWOOD

22 | UNLOCKED owned The Mahne Tea service mark.

23 |     92.     This false statement was made to the USPTO and communicated via the internet.

24 |     93.     Pursuant to and in furtherance of their fraudulent scheme, Defendants conspired to

25 | commit, and did commit, multiple related acts of interference with commerce by threats or violence,

26 | wire fraud, and/or mail fraud.

27 |     94.     By using this fraudulent scheme against others, Defendants have engaged in a pattern

28 |

1  of racketeering pursuant to 18 U.S.C. § 1961(5).

2        95.    Defendants have directly and indirectly conducted and participated in the conduct of

3  the enterprises' affairs through the pattern of racketeering and activity described above, in violation of

4  18 U.S.C. § 1962(c).

5        96.    As a direct and proximate result of the Defendants' racketeering activities and

6  violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in that: his

7  Twitter account has been suspended, he was suspended from the BIGO Live platform for three days,

8  his reputation has been tarnished, and he has lost earnings, profits, and goodwill.

9        97.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages and attorneys'

10  fees on its claim.

11  **COUNT II**

12  **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

13  **Against All Defendants**

14        98.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though

15  fully set forth herein.

16        99.    Defendants knew of the economic relationship between Plaintiff and BIGO Live.

17        100.    This economic relationship was likely to benefit Plaintiff.

18        101.    By committing The Wrongful Acts, Defendants intended to disrupt the economic

19  relationship or knew disruption was certain or substantially certain to occur.

20        102.    Due to Defendants' wrongful interference, the economic relationship has been

21  disrupted, causing Plaintiff harm and damages, including, but not limited to, lost revenue, lost

22  sponsorships, and lost opportunity for ancillary revenue.

23        103.    Defendants' Wrongful Acts were a substantial factor in causing Plaintiff's harm.

24        104.    Defendants, by engaging in the herein described acts and omissions, and/or by

25  authorizing or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable

26  conduct, and acted with willful and conscious disregard for Plaintiff's rights, welfare, and safety,

27  thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

28

## COUNT III

### TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

### Against All Defendants

105.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

106.    Defendants knew of the contractual relationship between Plaintiff and BIGO Live.

107.    Defendants' conduct prevented or hindered performance of the contract or knew disruption was certain or substantially certain to occur.

108.    Due to Defendants' Wrongful Acts, the contractual relationship has been disrupted, causing Plaintiff harm and damages, including, but not limited to, lost revenue, lost sponsorships, and lost opportunity for ancillary revenue.

109.    Defendants' Wrongful Acts were a substantial factor in causing Plaintiff's harm.

110.    By engaging in the herein described acts and omissions, and/or by authorizing or ratifying such acts, Defendants engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for Plaintiff's rights, welfare, and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

## COUNT IV

### FRAUD

### Against Defendants Hollywood Unlocked, Johnson, Pilson, Pilson Law Group, and Does

111.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

112.    Among other false statements and reputations detailed in The Wrongful Acts above, Defendants falsely claimed HOLLYWOOD UNLOCKED owned and use The Mahne Tea service mark. Such representations were made in writing and communicated over the internet to the USPTO.

113.    At all relevant times, Defendants had knowledge of the falsity of their statements and representations.

114.    As a direct and proximate result of Defendants' conduct, Plaintiff has been injured in

1  his reputation, business, and property, causing Plaintiff to suffer monetary damages in an amount not

2  less than $75,000, said damages to be proven at the time of trial.

3       115.   Because of the frauds described herein, Defendants are also liable for costs of this

4  lawsuit and reasonable attorneys' fees.

5       116.   Defendants' conduct as alleged above was done in furtherance of their own private

6  interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous

7  indifference to the consequences and with specific intent to harm. Accordingly, Plaintiff is entitled to

8  an award of punitive or exemplary damages in an amount to be proven at trial and sufficient to punish,

9  penalize, and deter Defendants from engaging in such conduct in the future.

10  **COUNT V**

11  **CONSPIRACY TO COMMIT FRAUD**

12  **Against Defendants Hollywood Unlocked, Johnson, Pilson, Pilson Law Group, and Does**

13       117.   Plaintiff hereby incorporates by reference each and every one of the preceding

14  paragraphs as if the same were fully set forth herein.

15       118.   At all relevant times, Defendants agreed to and did conspire to willfully and

16  maliciously injure Plaintiff in his reputation, trade, business, and/or profession through the fraud

17  committed by the Defendants.

18       119.   Defendants agreed to and conspired to commit the frauds alleged herein, in that the

19  Defendants conspired to steal Plaintiff's trademark and profit off of it. They had a meeting of the

20  minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, and

21  Plaintiff suffered harm as a result of Defendants' conduct and conspiracy.

22       120.   As a direct and proximate consequence of Defendants' conspiracy, Plaintiff has been

23  injured in his business, reputation, and property, causing Plaintiff to suffer monetary damages in an

24  amount not less than $75,000, said damages to be proven at the time of trial.

25       121.   Defendants' conduct as alleged above was done in furtherance of their own private

26  interests and was willful, malicious, wanton, and oppressive, and done with conscious and callous

27  indifference to the consequences and with specific intent to harm. Accordingly, Plaintiff is entitled to

28

1  an award of punitive or exemplary damages from Defendants and each of them in an amount to be

2  proven at trial and sufficient to punish, penalize, and deter Defendants from engaging in such conduct

3  in the future.

4  **COUNT VI**

5  **TRADEMARK INFRINGEMENT – Violation of 15 U.S.C. § 1125**

6  **Against Defendants Hollywood Unlocked, Johnson, Pilson, Pilson Law Group, and Does**

7      122.    Plaintiff hereby incorporates by reference each and every one of the preceding

8  paragraphs as if the same were fully set forth herein.

9      123.    Plaintiff has used the name The Mahne Tea since 2019 professionally and across social

10  media platforms.

11      124.    Plaintiff's use constitutes a valid and legally protectable mark.

12      125.    Plaintiff owns the mark.

13      126.    Defendants knew of Plaintiff's ownership and use of the mark.

14      127.    On or about June 14, 2021, Defendant HOLLYWOOD UNLOCKED, by and through

15  Defendants JOHNSON, PILSON, and PILSON LAW GROUP, knowingly, intentionally, and in bad

16  faith infringed upon Plaintiff's trademark by registering The Mahne Tea with the USPTO.

17      128.    Defendants HOLLYWOOD UNLOCKED and JOHNSON continued to infringe upon

18  Plaintiff's trademark by preventing Plaintiff from using his valid mark, attempting to extort Plaintiff

19  by demanding $100,000 in exchange for assignment of the trademark, and using the mark as described

20  herein to harm Plaintiff, his reputation, and his business.

21      129.    Defendants' use of the mark is likely to cause confusion, mistake, and deception as to

22  the affiliation, connection, association, origin, sponsorship, or approval of Defendants' business

23  activities.

24      130.    Plaintiff is suffering irreparable harm as a direct result of Defendants' infringement of

25  the trademark, and there is no adequate remedy at law for Plaintiff's loss of business reputation,

26  customers, market position, confusion of potential customers, and loss of goodwill.

27      131.    Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to an injunction against Defendants'

28

1  continuing infringement.

2      132.   Because Defendants' actions have been committed with intent to damage Plaintiff and

3  to confuse and deceive the public, Plaintiff is entitled to treble his actual damages, statutory damages,

4  and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15

5  U.S.C. § 1117(a)-(b).

6  **COUNT VII**

7  **CYBERPIRACY – Violation of 15 U.S.C. § 1125(d)**

8  **Against Defendants Hollywood Unlocked, Johnson, and Does**

9      133.   Plaintiff hereby incorporates by reference each and every one of the preceding

10  paragraphs as if the same were fully set forth herein.

11      134.   Since at least September 2019, Plaintiff has used the name The Mahne Tea in a

12  professional capacity. Plaintiff has a valid and legally protectable interest in the mark The Mahne Tea.

13  At all times material, Plaintiff's use of the mark was distinctive.

14      135.   In December 2020, Plaintiff created and began using the domain

15  www.twitter.com/themahnetea to connect with followers on social media and further his personal and

16  business interests.

17      136.   On or about June 11, 2021, in a bad faith effort to harm Plaintiff personally and

18  professionally, as well as boost Defendants own reputation and profits, Defendants filed an application

19  to register The Mahne Tea as a service mark with the USPTO. This mark is identical or confusingly

20  similar to Plaintiff's mark. Defendant PILSON failed to exercise due diligence as required as her

21  duties as an attorney, as to ascertain if a trademark had been issued prior to filing a trademark

22  application for her clients, Defendants, LEE and HOLLYWOOD UNLOCKED. Based on information

23  and belief, Plaintiff asserts that Defendant PILSON masterminded a scheme to defraud Plaintiff of his

24  trademark and ultimately to cause him to be removed from the platform of Twitter and BIGO.  There

25  are multiple other incidents where Defendant PILSON acting in concert with her client, Defendant

26  LEE to remove other Social Media Influencers from their platforms using the USPTO to fraudulently

27  file trademark applications with the malicious intent to extort money from the rightful trademark

28

1  owner or threaten them with removal from their social media platform.

2     137.   In furtherance of their bad faith intent, on June 11, 2021, Defendants reported

3  Plaintiff's domain name to Twitter, alleging trademark infringement. As a result of their actions,

4  Plaintiff has lost use of the domain and his account has been suspended.

5     138.   Upon the USPTO granting Defendants' application on or about June 14, 2021,

6  Defendants HOLLYWOOD UNLOCKED and JOHNSON immediately offered to sell the trademark

7  and release the domain name in exchange for $100,000.

8     139.   Plaintiff is suffering irreparable harm as a direct result of Defendants' cyberpiracy and

9  associated trademark infringement. There is no adequate remedy at law for Plaintiff's loss of business

10  reputation, customers, market position, confusion of potential customers, and loss of goodwill.

11     140.   Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to an injunction against Defendants'

12  continuing infringement.

13     141.   Because Defendants' actions have been committed with intent to damage Plaintiff and

14  to confuse and deceive the public, Plaintiff is entitled to treble its actual damages, statutory damages,

15  and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15

16  U.S.C. § 1117(a)-(b).

17                                    **COUNT VIII**

18                    **TRADE LIBEL / BUSINESS DISPARAGEMENT**

19        **Against Defendants Hollywood Unlocked, Johnson, Closs, Bellefleur, and Does**

20     142.   Plaintiff hereby incorporates by reference each and every one of the preceding

21  paragraphs as if the same were fully set forth herein.

22     143.   Defendants have committed Wrongful Acts, including, but not limited to publishing

23  knowingly false and malicious statements regarding Plaintiff.

24     144.   The statements were communicated to persons other than Plaintiff.

25     145.   The false and malicious statements disparage the Plaintiff, his reputation, and his

26  business. The statements also place Plaintiff in a false light.

27     146.   An average person would consider the false light offensive.

28

1       147.    Defendants' statements have caused actual harm to Plaintiff, including but not limited

2 to, loss of earnings and profits, harm to his personal and professional reputation, decreased business

3 traffic, and adverse employment consequences.

4 **COUNT IX**

5 **DEFAMATION PER SE**

6 **Against Defendants Hollywood Unlocked, Johnson, Closs, Bellefleur, and Does**

7       148.    Plaintiff hereby incorporates by reference each and every one of the preceding

8 paragraphs as if the same were fully set forth herein.

9       149.    Defendants intentionally made false and defamatory statements concerning Plaintiff as

10 listed in The Wrongful Acts detailed above.

11       150.    Defendants have published through speech and/or writing comments imputing that

12 Plaintiff has committed a crime, such as grooming and/or having a sexual relationship with a minor.

13 The defamatory statements were not privileged and were published.

14       151.    The statements are false.

15       152.    Defendants made the defamatory statements intentionally, knowingly, willfully, and/or

16 with conscious disregard for their truth or falsity.

17       153.    The wrongful conduct was a substantial factor in causing harm to Plaintiff, including

18 but not limited to, economic losses, general and special damages, including personal physical injury,

19 sickness and mental worry, anxiety, anguish, suffering and grief, lost income, and lost employment

20 opportunities, in an amount to be proved at trial.

21       154.    Because Defendants knew the statements were false or that they had serious doubts

22 about the truth of the statements, the statements are defamatory per se and actionable irrespective of

23 special harm.

24       155.    As a further result of Defendants acts and omissions, Plaintiff has necessarily retained

25 attorneys to prosecute this action and is therefore entitled to an award of reasonable attorneys' fees and

26 costs incurred in bringing this lawsuit.

27 **COUNT X**

28

**GROUP BOYCOTT – 15 U.S.C. § 1**

**Against Defendants Hollywood Unlocked, Johnson, Closs, Bellefleur, and Does**

156.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

157.     Defendants HOLLYWOOD UNLOCKED, JOHNSON, CLOSS, and BELLEFLEUR are horizontal competitors of Plaintiff.

158.     Defendants combined and conspired to restrain trade in violation of Sherman Act Section 1 by engaging in a scheme to shut Plaintiff out of the BIGO Live market and related markets.

159.     Defendants' agreement and actions in furtherance of the conspiracy restrict Plaintiff's ability to compete in the BIGO Live market and related markets.

160.     Plaintiff has been harmed by the conspiracy.

161.     Defendants' actions constitute an unreasonable, *per se* restraint of trade.

162.     Beginning in June 2021, and continuing to date, by virtue of their agreed conduct to refuse to deal with and engage in a group boycott of Plaintiff, Defendants are each liable jointly and severally to the Plaintiff for treble the amount of damages and losses caused to Plaintiff by unreasonable and illegal restraints of trade undertaken by Defendants, in an amount to be proven at trial, together with a further amount reflecting treble the further losses and damages suffered as a result of any continuation of the same conduct during the pendency of this litigation, and statutory pre-judgment interest from the date of service of the complaint, in addition to attorneys' fees and other costs of litigation pursuant to 15 U.S.C. § 15(a).

## COUNT XI

## SPECIFIC PERFORMANCE

163.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

164.     Defendants have breached the contract by taking Plaintiff off the platform and suspending the Plaintiff's account causing him irreparable damages which cannot be adequately

1 compensated by monetary damages.  Irreparable damages in the form of followers and revenue that
2 the Plaintiff has built up over the past three years on the platform.

3     165.    Plaintiff has no adequate remedy at law to recover lost followers, good will and
4 popularity as Plaintiff is unique as a performer on the BIGO platform.

5     166.    Plaintiff prays the court order and adjudge that Defendant specifically perform and
6 reinstate the Plaintiff's account on the BIGO platform.

7

8 **COUNT XII**

9 **DECLARATORY RELIEF, WITH REQUEST FOR TEMPORARY PRELIMINARY AND**
10 **PERMANENT INJUNTIVE RELIEF**

11     165.    Plaintiff hereby incorporates by reference each and every one of the preceding
12 paragraphs as if the same were fully set forth herein.

13     166.    Plaintiff is informed and believes and thereon alleges that an actual controversy exists
14 between Plaintiff and Defendant relative to the BIGO Platform.

15 167. Plaintiff prays that the Court adjudicate the rights, interest, duties, and obligations of
16 Plaintiff and Defendant BIGO under the BIGO agreement. Plaintiff specifically prays that the
17 Court determine that Plaintiff was wrongfully terminated from the platform due to false
18 allegations by other defendants LEE, CLOSS AND BELLEFLEUR.

19     168.    In conjunction therewith, Plaintiff requests that this Court issue temporary, preliminary
20 and permanent injunctive relief which prohibits Defendant BIGO from suspending Plaintiff
21 from the platform and furth request the Court prohibit Defendants LEE, CLOSS AND
22 BELLEFLEUR, PILSON from making false complaints, false trademark applications and
23 disparaging Plaintiff's brand, during the pendency of these proceedings.

24     WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them, as
25 follows:

26
27
28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Temporary, preliminary and permanent injunctions precluding Defendants HOLLYWOOD UNLOCKED and JOHNSON from infringing upon Plaintiff's trademark, and to reinstate Plaintiff on the BIGO Platform during the pendency of this action.

2. Compensatory damages in the monetary amount according to proof and believed to be in excess of $1,000,000.00.

3. For treble damages as allowed by law.

4. For punitive damages as allowed by law.

5. For reasonable attorneys' fees.

6. For costs of suit incurred herein; and

7. For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues and causes of action subject to a jury trial.

Respectfully Submitted,

Date: 10/4/2021

**RONDA R. DIXON**
Counsel for Plaintiff

COMPLAINT FOR DAMAGES - 20