O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUAN JONES,<br><br>      Plaintiff,<br><br>  v.<br><br>HOLLYWOOD UNLOCKED, INC., et al.,<br><br>      Defendants. | Case No.: 2:21-cv-07929-MEMF(PVCx)<br><br>**ORDER GRANTING DEFENDANT BIGO TECHNOLOGY AND BIGO TECHNOLOGY, PTE, LTD'S MOTION TO STAY CASE PENDING ARBITRATION [ECF NO. 46]** |

  Before the Court is the Motion to Dismiss, or, in the Alternative, Stay Pending Arbitration filed by Defendants Bigo Technology and Bigo Technology PTE, LTD.[1] ECF No. 46. For the reasons stated herein, the Court STAYS this action pending arbitration. The parties are ORDERED to file a status report informing the Court of the status of their arbitration within sixty (60) days of this Order and then every ninety (90) days thereafter.

/ / /

---

[1] The following motions are also pending before the Court: Motion to Dismiss, filed by Defendants Keiyana Fordham Pilson and Pilson Law Group (ECF No. 26) and anti-SLAPP Motion to Strike and Motion to Dismiss filed by Defendants Hollywood Unlocked, Inc. and Jason Lee Johnson (ECF No. 28). The Court addresses each of these motions in separate orders.

1

I.    **Factual Background**[2]

Plaintiff TaQuan Jones ("Jones") is a social media influencer,[3] media personality, and celebrity gossip blogger. Compl. ¶¶ 2, 12. Defendant Jason Lee Johnson ("Johnson")[4] is a media personality and the founder, editor-in-chief, and CEO of the celebrity gossip website Hollywood Unlocked, Inc. (collectively, "Hollywood Unlocked Defendants").[5] *Id.* ¶¶ 3–4; ECF No. 28 at 8. Defendants Bigo Technology and Singapore-based Bigo Technology PTE, LTD (collectively, "Bigo") own and operate the social network and video platform, Bigo Live.[6] Compl. ¶ 23; ECF No. 46 at 6. Defendant Keiyana Fordham Pilson ("Pilson") is an attorney licensed to practice in California. She is employed by Defendant Pilson Law Group, PLC (collectively, the "Pilson Defendants"). Compl. ¶¶ 18, 36.

Jones, performing under the name "Tae the Mahne Tea," rose to popularity through his celebrity gossip broadcast, *The Mahne Tea*, which is streamed[7] on Bigo Live. *Id.* ¶¶ 2, 12, 23. Since his first broadcast in September 2019, Jones has amassed nearly two million followers becoming "one of [Bigo Live's] most popular artists." *Id.* ¶¶ 23–25. In April 2021, Johnson, by and through his company, Hollywood Unlocked, Inc. ("Hollywood Unlocked"), contacted Jones with a request to collaborate on Bigo Live. *Id.* ¶¶ 28–31. Though Jones initially agreed to collaborate, the partnership ended a short while later. *Id.* ¶¶ 33–34.

---

[2] Unless otherwise indicated, the following factual background is derived from the Complaint. ECF No. 1 ("Compl.").
[3] "[A] person who is able to generate interest in something (such as a consumer product) by posting about it on social media." *Influencer*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/influencer.
[4] Jason Lee Johnson refers to himself as "Lee" in his moving papers. However, during the March 31, 2022 Hearing, Johnson clarified that he goes by both "Lee" and "Johnson." Accordingly, the Court refers to Jason Lee Johnson as "Johnson" throughout this Order.
[5] *See Hollywood Unlocked*, https://hollywoodunlocked.com/ (last visited Sept. 19, 2022).
[6] Bigo Live is a video streaming platform. It allows users to broadcast or "stream" videos directly to viewers. The platform's Global Live Streaming function allows users to "stream to show their life moments, showcase their talents, interact and send virtual gifts in real time, and enjoy fun live sessions with people worldwide." *See Products*, https://www.bigo.sg/about; s*ee also Hershewe v. JOYY Inc.*, No. 2:20-CV-10611-SB-AFM, 2021 WL 6536670, at *1 (C.D. Cal. Nov. 5, 2021) (describing Bigo Live as a social media platform "which enables users to live stream their specific moments and talk live with each other").
[7] A "stream" is "digital data (such as audio or video material) that is continuously delivered one packet at a time and is usually intended for immediate processing or playback." *Stream*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/stream (last visited Sept. 19, 2022). At the March 31, 2022 Hearing, Jones clarified that Bigo Live enables streamers to monetize their video streams.

### A. The Alleged Harm

In June 2021, the Hollywood Unlocked Defendants made various defamatory statements about Jones's character and filed an application with the United States Patent and Trademark Office ("USPTO") for the "Mahne Tea" mark. *Id.* ¶¶ 35–83. This behavior serves the dual purpose of damaging his reputation and increasing Johnson's own internet exposure. *Id.* ¶¶ 46–70.

1. <u>The Defamatory Language and Harmful Conduct</u>

Starting on or about June 20, 2021, Johnson began to make false and disparaging statements about Jones's personal life on Bigo Live. These statements included comments insinuating that Jones has a sexually transmitted disease and is a "groomer" and "pedophile and molester." *Id.* ¶¶ 48–62. On or about September 13, 2021, Johnson filed a report with the leasing office at Jones's place of residence, reporting Jones as a pedophile. *Id.* ¶ 60. On the same day, Johnson also filed a report with the police department in Jones's municipality, reporting the same. *Id.* ¶¶ 61–62. As a result of these reports, Jones has been subject to hate mail and has lost followers on his social media accounts. *Id.* ¶ 62. The Hollywood Unlocked Defendants and other Bigo Live users have continued to make disparaging remarks about Jones on their Bigo Live broadcasts and on other social media platforms. *Id.* ¶¶ 66–67.

/ / /

/ / /

### a. "The Mahne Tea" Trademark

Jones has continuously used the term "The Mahne Tea" ("The Mahne Tea" or the "Mark") on Bigo Live since launching his broadcast in 2019. *Id.* ¶ 26. In December 2020, Jones created an account on the social networking site Twitter[8] using the handle "@themahnetea."[9] *Id.* ¶ 27. On or about June 11, 2021, Johnson, by and through Hollywood Unlocked, retained attorney Pilson to register The Mahne Tea as a service mark with the USPTO despite being aware of Jones's prior use of the mark. *Id.* ¶¶ 36–38. The USPTO granted Johnson's application on June 14, 2021. *Id.* ¶ 43.

### b. Jones's Suspension from Twitter and Bigo Live

On or about June 11, 2021, Johnson, referring to his pending trademark application for The Mahne Tea, submitted a complaint to Twitter alleging that Jones violated the platform's trademark policy by using The Mahne Tea on his Twitter page. *Id.* ¶¶ 39–41. On or about June 14, 2021, Twitter, having found Jones in violation of its trademark policy, suspended Jones's account. *Id.* ¶¶ 40–42. On the same day, the Hollywood Unlocked Defendants informed Jones that they would surrender the Mark and drop the Twitter complaint in exchange for $100,000. *Id.* ¶ 44. Jones refused their offer. *Id.* ¶ 45. Jones's account remains suspended. *Id.* ¶ 42.

---

[8] Twitter "is a service for friends, family, and coworkers to communicate and stay connected through the exchange of quick, frequent messages. People post Tweets, which may contain photos, videos, links, and text. These messages are posted to your profile, sent to your followers, and are searchable on Twitter search." A "Tweet" "is any message posted to Twitter which may contain photos, videos, links, and text." *See* https://help.twitter.com/en/resources/new-user-faq. "Followers" are people who receive a user's Tweets. https://help.twitter.com/en/using-twitter/following-faqs. Other courts in this circuit have described Twitter as a "social media platform with roughly 330 million monthly active users," *O'Handley v. Padilla*, No. 21-CV-07063-CRB, 2022 WL 93625, at *1 (N.D. Cal. Jan. 10, 2022), and as a "social networking platform" that "gives people a vehicle to express themselves online in short soundbites called 'tweets' that are limited to 140 characters. By default, any Twitter user can sign up to 'follow' any other Twitter user, which means Twitter will cause the follower to receive all tweets the author publishes. When an author publishes tweets, he's often publishing them to a wide audience, and he often has no personal connection with most members of that audience." *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 960 (N.D. Cal. 2016). In November 2017, Twitter increased the number of characters in English language tweets from 140 to 280. Hayley Tsukayama, *Twitter is officially doubling the character limit to 280*, WASH. POST (Nov. 7, 2017), https://www.washingtonpost.com/news/the-switch/wp/2017/11/07/twitter-is-officially-doubling-the-character-limit-to-280/.

[9] A "handle" is the equivalent of a username. It is "how you're identified on Twitter, and is always preceded immediately by the @ symbol. For instance, Twitter Support is @TwitterSupport." *Glossary*, Twitter, https://help.twitter.com/en/resources/glossary (last accessed Aug. 10, 2022).

On or about September 17, 2021, Johnson and Hollywood Unlocked similarly reported Jones to Bigo for an alleged trademark violation for his use of "The Mahne Tea." *Id.* ¶ 63. Jones was subsequently suspended from Bigo Live for three days. *Id.* ¶¶ 64–65.

    c.   The Arbitration Agreement[10]

According to Bigo, anyone who wishes to use Bigo Live must create and sign into a Bigo Live account. ECF No. 46, Declaration of Colin Fraser ("Fraser Decl.") ¶ 4. To complete the sign in process, one must click to confirm the following statement: "I have read and agree to the User Agreement, Privacy Policy."[9] *Id.* As a result, all people who use Bigo Live are subject to the User Agreement. *Id.*[10] The User Agreement contains a code of conduct and an arbitration provision ("Provision"), which mandates that all disputes "arising out of or in connection" with the agreement are subject to arbitration in front of the Singapore International Arbitration Centre. Mot. at 6.

In full, the Provision provides:

> This Agreement shall be governed by and construed in accordance with the law of Singapore, without regard to choice of law principles. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore Arbitration Center for the time being in force, which rules are deemed to be incorporated by reference in this clause. The seat of the arbitration shall be Singapore. The language of the arbitration shall be English.

Mot., Ex. A at 5 ("User Agreement").

## II.   Procedural Background

On October 4, 2021, Jones filed this action against Defendants Hollywood Unlocked, Inc., Jason Lee Johnson, Robert Kawan Closs, Guardini Bellefleur, Bigo Technology, Bigo Technology PTE, LTD, Keiyana Fordham Pilson, and Pilson Law Group, P.C. *See generally* Compl. Jones alleges twelve causes of action: (1) Civil RICO; (2) tortious interference with prospective economic advantage; (3) tortious interference with contract; (4) fraud; (5) conspiracy to commit fraud; (6) trademark infringement under § 1125 of the Lanham Act; (7) cyberpiracy; (8) trade libel/business

---

[10] The following facts are derived from Bigo's Motion. Jones does not contest Bigo's allegations as they relate to the Arbitration Agreement.

disparagement; (9) defamation per se; (10) group boycott – per se violation of the Sherman Act; (11) specific performance; (12) declaratory relief with request for temporary, preliminary, and injunctive relief. *See id.* ¶¶ 88–168. Of the twelve claims, only two are alleged against Bigo: tortious interference with prospective economic advantage; tortious interference with a contractual relationship. *See id.* ¶¶ 98–104; 105–10.[11]

On February 7, 2022, Bigo filed the instant Motion to Dismiss, or, in the Alternative, Stay Pending Arbitration. *See* Mot. On March 4, 2022, Jones filed an Opposition arguing that while he intends to file a Notice of Intent to Arbitrate, dismissal under Rules 12(b)(6) and 12(b)(3) is improper. ECF No. 57 ("Opp'n"). Bigo filed a Reply on March 17, 2022. ECF No. 60 ("Reply"). The Court heard argument on March 31, 2022. Minute Order, ECF No. 65 ("March 31 Hearing").

## **MOTION TO COMPEL**

Bigo requests the Court dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(3) for improper venue and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. at 7. In the alternative, Bigo requests that the Court stay this case pending arbitration. *Id.* As the Court finds arbitration appropriate, it does not consider the parties' arguments as they pertain to the Motion to Dismiss.

/ / /

/ / /

---

[11] Jones fails to specify against which defendants he brings his eleventh cause of action for specific performance and twelfth cause of action for "declaratory relief, with request for temporary [,] preliminary [,[ and permanent injuntive [sic] relief." *See* Compl. ¶¶ 163–68. However, all are *remedies*, not causes of action. *See, e.g., Rogers v. Davis*, 34 Cal.Rptr.2d 716, 718 n.2 (Ct. App.1994) (holding that specific performance is an "alternative remed[y] for a breach of contract"); *McDowell v. Watson*, 69 Cal. Rptr. 2d 692, 695 (Ct. App. 1997) ("Injunctive relief is a remedy and not, in itself, a cause of action.") (quoting *Shell Oil Co. v. Richter*, 125 P.2d 930, 933 (Ct. App. 1942); *Canova v. Trustees of Imperial Irrigation Dist. Emp. Pension Plan*, 59 Cal. Rptr. 3d 587, 595 (Ct. App. 2007) (holding that declaratory relief is not a cause of action as it "operates prospectively to declare future rights, rather than to redress past wrongs."); *Hood v. Superior Ct.*, 39 Cal. Rptr. 2d 296, 298 (Ct. App. 1995) (where declaratory relief was deemed to be "unnecessary and superfluous" because the "issues invoked in [the] cause of action already were fully engaged by other causes of action."). Accordingly, the Court may not consider the merits of these two causes of action.

### I. Applicable Law

Under Section 2 of the Federal Arbitration Act ("FAA" or the "Act"), arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

Within the Ninth Circuit, "[i]t is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (internal quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (internal quotation marks omitted). "But arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *Id.* (internal quotation marks omitted). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. In light of this, before considering the substantive arguments in support of Bigo's Motion to Dismiss, the Court must first address the question of whether this dispute must proceed to arbitration.

In determining whether to compel arbitration, the court must consider two gateway factors: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Moreover, arbitration agreements may be

invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 343 (internal quotation marks omitted) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## II. Discussion

### A. The Parties are subject to a valid arbitration agreement.

First, the Court considers whether the User Agreement includes a valid arbitration agreement. As stated above, Bigo argues that all users are covered by the User Agreement. Mot. at 6. In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012) (internal quotation marks omitted). The burden is on the party seeking arbitration to prove the existence of an arbitration agreement. *Id.* at 1224–25.

Jones does not dispute the existence of the arbitration provisions in the User Agreement, nor does he dispute that he is covered by its arbitration clause. *See* Opp'n at 19. Indeed, Jones has "expressed to [Bigo] an intent to file a Notice of Intent to Arbitrate upon [the basis of the Agreement]." *Id.*; ECF No. 46-9, Ex. G.

In light of the above, the Court finds that Bigo has met its burden and that a valid arbitration agreement exists between the parties.

#### 1. The Parties agree that the dispute falls within the scope of the arbitration agreement.

Next, the Court considers whether Jones's claims fall within the Agreement's scope. As discussed above, the arbitration provision in the User Agreement provides:

> This Agreement shall be governed by and construed in accordance with the law of Singapore, without regard to choice of law principles. **Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance**

> **with the Arbitration Rules of the Singapore Arbitration Center for the time being in force, which rules are deemed to be incorporated by reference in this clause.** The seat of the arbitration shall be Singapore. The language of the arbitration shall be English.

*See* User Agreement (emphasis added). Once again, Jones has not alleged that his claims fall outside the Provision's scope. Instead, Jones has specifically stated that he intends to engage in arbitration as mandated by the Agreement. *See* Opp'n at 19; ECF No. 46-9, Ex. G. As such, the Court finds that the Agreement covers Jones's claims.

As the User Agreement contains a valid arbitration clause and the parties agree that arbitration is proper, due to the Ninth Circuit's "presumption of arbitrability," *see Comedy Club, Inc.*, 553 F.3d at 1284, the Court does not evaluate the merits of Bigo's Motion to Dismiss.

## **CONCLUSION**

For the reasons stated above, this action is hereby STAYED pending resolution of the arbitration. Accordingly, this action is placed on the Court's inactive calendar pending the arbitration process. The parties shall file a joint report every ninety (90) days, starting from the date of this Order.

IT IS SO ORDERED.

Dated: November 22, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge